UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER EARL VAN HECK,

    Plaintiff,                                          Civil Action No. 06-15233

v.                                               HON. VICTORIA A. ROBERTS
                                                 U.S. District Judge
                                                 HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL                 U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

       Plaintiff brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income under Title XVI of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

       On August 19, 2003, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging an onset date of March 10, 1998 (Tr. 50-52). After the initial denial of his application, Plaintiff made a request for an administrative hearing, held in Oak Park, Michigan on September 21, 2005 (Tr. 200). Administrative Law Judge ("ALJ") Michael F.

Wilenkin presided (Tr. 28). Plaintiff, unrepresented, testified as did Pauline Pegram, a vocational expert ("VE") (Tr. 202-216, 216-220). On November 10, 2005, ALJ Wilenkin determined that Plaintiff was not disabled, finding that he retained the ability to perform exertionally medium work (Tr. 28). On September 29, 2006, the Appeals Council denied review (Tr. 5-7). Plaintiff filed for judicial review of the final decision on November 27, 2006.

## **BACKGROUND FACTS**

Plaintiff, born May 21, 1952, was age 53 when the ALJ issued his decision (Tr. 50). He completed high school and worked previously as a roofer (Tr. 59, 64). Plaintiff alleges disability as a result of spinal chord injuries, emphysema, and asthma (Tr. 58).

### A.  Plaintiff's Testimony

Plaintiff testified that he lived in a flat with his adult son in Mt. Clemens, Michigan (Tr. 203). He reported that he did not possess a driver's license, adding that a friend had brought him to the hearing (Tr. 203). Plaintiff, a high school graduate, reported that he previously worked as a roofer but had been unable to work for several years due to chronic back pain resulting from multiple injuries (Tr. 203-204). He described the pain as radiating from his back up into his shoulders and down to his feet (Tr. 205). Plaintiff reported that in the past he coped with discomfort by undergoing chiropractic treatment, indicating that he was reluctant to take pain medication (Tr. 206). He attributed his continued ability to walk to chiropractic adjustments and massage, reporting that although he did not use a crutch or walker, he regularly required the use of a body brace (corset) (Tr. 207).

Plaintiff stated that a number of treating sources had recommended spinal fusion surgery, but he expressed fear that he would in end up in "worse shape" following surgery (Tr. 208). He testified that he had been prescribed a freezing agent to control his discomfort, which "numb[ed] the pain," but did not offer long term relief (Tr. 208).

Plaintiff also reported that he had experienced asthma for the past three years which was treated with a bronchodialator (Tr. 208-209). He indicated that he experienced wheezing intermittently rather than constantly, opining that the condition was precipitated by allergies (Tr. 209-210). Plaintiff testified that in addition to back pain and asthma, he experienced a decreased appetite and sleeping difficulties (Tr. 211). He acknowledged caring for his personal needs, but stated that his "lady friend" or his son regularly performed cleaning chores (Tr. 212). Denying any current recreational interests or hobbies, Plaintiff reported that his condition prevented him from participating in his former activities such as baseball, volleyball, and basketball (Tr. 212). He testified that on a typical day, he would prepare breakfast; watch television; nap; prepare a light lunch or dinner; and do the dishes (Tr. 213).

Plaintiff estimated that he could stand or sit for up to twenty minutes and walk for fifteen (Tr. 213). He indicated that back pain obliged him to recline at least three times a day, and limited his ability to bend, stoop, or squat (Tr. 214). He admitted lifting up to eight pounds, but testified that he refrained from heavier lifting to avoid the onset of exertionally-induced asthma (Tr. 214).

### B. Medical Evidence

#### 1. Treating Sources

In September, 2002, Plaintiff sought emergency treatment for psoriasis (Tr. 97). He received a refill of a prescription for a topical medication and was discharged (Tr. 97). In July, 2003, imaging studies of Plaintiff's cervical, thoracic, and lumbar spine showed the presence of moderate disc degeneration at C5 along with Grade I spondylolisthesis at L5 (Tr. 100). In August, 2003, Frank C. Miramonti, D.C.,C.C.S.P., opined that Plaintiff "should not attempt to return to the occupation of roofer" due to instability in his lumbar spine (Tr. 103). The next month, Dr. Miramonti, referencing the July 2003 imaging studies, concluded that Plaintiff was limited to sitting, standing, walking for a maximum of one hour and lifting of not more than 10 pounds (Tr. 101). In November 2003 Plaintiff was prescribed Motrin 800 after complaining of shoulder pain (Tr. 132).

In February 2004 imaging studies showed "degenerative disc change at C5-6" (Tr. 124). The same month, Plaintiff sought emergency treatment for low back and right sacroiliac joint pain (Tr. 148). He was treated with Toradol 60 and released (Tr. 148). Also in February 2004 David K. Davis, M.D., examined Plaintiff, noting "give way weakness throughout the upper and the lower extremities," but "normal muscle tone" (Tr. 117, 142). Dr. Davis found the presence of myofascial pain syndrome, a "normal" neuromusculoskeletal examination, and a history of depression and anxiety (Tr. 118). He concluded that Plaintiff retained the ability to perform exertionally medium work, with an unlimited ability to walk, stand, sit, push, and pull[1] (Tr. 119-120). He also found that Plaintiff was restricted to

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small

occasional climbing, kneeling, crouching, crawling, and stooping, with a complete preclusion on balancing (Tr. 120). Dr. Davis found the absence of manipulative, communicative, and visual impairments, but found that Plaintiff experienced environmental limitations pertaining to temperature extremes, dust, hazards, and fumes, odors, chemicals, and gases (Tr. 122).

JoAnne Levitan, M.D., also examined Plaintiff in February 2004 for complaints of thumb numbness (Tr. 136). Dr. Levitan advised against surgery, noting the absence of disease (Tr. 136). In March 2004 an EMG showed "peripheral sensory polyneuropathy of unknown etiology" but the absence of lumbosacral radiculopathy (Tr. 114, 138). In November 2004, Plaintiff again sought emergency treatment for pain as a result of back strain (Tr. 144). Treatment notes by Dr. Miramonti created between September 2003 to August 2005 show that Plaintiff reported pain anywhere between a "2" and a "10" on a scale of 1 to 10 (Tr. 150-158).

**2. Consultive and Non-Examining Sources**

In October 2003, L. Banerji, M.D., examined Plaintiff on behalf of the SSA (Tr. 106-112). Dr. Banerji noted Plaintiff's history of compression fractures of the cervical spine and other back injuries as a result of vehicle accidents (Tr. 106). Plaintiff demonstrated the ability to lift "15-20 pounds from the floor and carry it up to a distance of 10-20 feet" (Tr.

---

tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds

106). Plaintiff reported that back pain precluded climbing stairs, stating further that he had been using a lumbar brace for the past 15 years (Tr. 106). He also estimated that he could "stand for ten minutes and sit for 20" (Tr. 106). Plaintiff, admitting that he currently smoked a pack of cigarettes each day, indicated that his asthma condition was precipitated by humidity and physical exertion, reporting that in humid weather, he was obliged to use an inhaler up to three times a day (Tr. 106). In addition to Plaintiff's back and respiratory conditions, Dr. Banerji noted that Plaintiff experienced psoriasis (Tr. 107). The physician observed that "[a]ll movements of the cervical spine are normal and pain free," observing further 5/5 grip strength and the absence of muscle atrophy (Tr. 108).

A November 2003 Residual Functional Capacity Assessment found that Plaintiff retained the ability to perform work at the medium exertional level (Tr. 90). The assessment found further that Plaintiff could stand, walk, or sit for six hours in the course of an eight-hour workday as well as an unlimited ability to push or pull in the upper and lower extremities (Tr. 90). The assessment found that Plaintiff could balance, kneel, or crawl on a frequent basis, but limited Plaintiff to occasional stooping and crouching (Tr. 91). Plaintiff was deemed able to climb on a occasional to frequent basis (Tr. 91). The assessment noted the absence of manipulative, visual, communicative, or environment limitations, concluding that Plaintiff's allegations of limitation were "partially credible" (Tr. 92-94).

### 3. Material Submitted Subsequent to the November 10, 2005 Administrative Decision

In January 2006, Dr. Davis noted that December 2005 x-rays demonstrated

degenerative changes without compression fractures or subluxations, observing further that Plaintiff was "in no significant distress" (Tr. 187). Dr. Davis re-prescribed Flexeril for back pain, noting that Plaintiff also had a history of depression and anxiety (Tr. 188). A February 2006 MRI of the lumbosacral spine showed "minimal diffuse bulge of the L5-S1 disc," but otherwise unremarkable results (Tr. 190). In February 2006 Plaintiff denied Dr. Davis' finding that he experienced depression, stating further that his anxiety was due to "the [constant] pain in my lower back and lumbar area" (Tr. 196). Notes from a March 2006 examination by Dr. A. Said show that Plaintiff ambulated "fairly well without any walking aid" (Tr. 198).

### C. Vocational Expert

VE Pauline Pegram testified that if Plaintiff's testimony were fully credited, he would be unable to perform any gainful work (Tr. 216). The ALJ composed the following hypothetical limitations including Plaintiff's age, education, and absence of past relevant work:

> "[T]he residual functional capacity to stand and/or walk six of eight hours of an eight hour workday, sit two of eight hours of an eight hour workday, lift as much as twenty pounds occasionally, as much as ten pounds frequently. Assume the history and complaint of pain and discomfort in the low and mid-back. . . . primarily soft tissue in nature, muscular skeletal in nature. Without significant definitive [INAUDIBLE] component or neurological deficit associated with the underlying muscular skeletal pathology . . . . for the purpose of this question, not of sufficient severity, intensity, or frequency to interfere with or otherwise preclude functioning at the level suggested. . . . You may assume that, as a prophylactic matter [regarding Plaintiff's allegation of asthma] the hypothetical individual should avoid exposure to significant concentrations of atmospheric irritants, such as dust, smoke, fumes, noxious odors and the like. You may assume that the deficit suffered or the modalities

employed to treat the same have in no way interfered with the hypothetical individual's ability to perform the usual and customary cognitive aspects of vocational functioning. Nor do they warrant that he lie down or otherwise seek encumbancy during the course of a typical workday.

(Tr. 217-218). The VE replied that such an individual could perform the work of a night watchman, stocker, and cashier, finding "well over 50,000" such jobs existing in southeastern Michigan (Tr. 218-219). She testified that if the hypothetical were amended to include the ability to lift fifty pounds occasionally and twenty-five pounds frequently; the ability to perform occasional climbing, balancing, kneeling, crouching, crawling, and stooping; and a preclusion on balancing, the same individual could also perform the work of a packager in the food and pharmaceutical industries, finding the existence of 30,000 such jobs in the region (Tr. 220). The VE concluded her testimony by stating that her testimony conformed to the Dictionary of Occupational Titles (Tr. 220).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that although Plaintiff experienced the severe impairments of asthma, mild spinal degenerative joint disease, and "questionable peripheral neuropathy of unknown etiology," none was severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 27). He noted that although Plaintiff had no past relevant work experience, he retained the following residual functional capacity ("RFC"):

> "[T]o lift 50 pounds occasionally, lift up to 25 pounds frequently, stand or walk eight hours in a work day, sit for eight hours in a work day in any combination; push or pull without limitation; perform postural activities occasionally except no balancing; perform any manipulative functions; see,

> hear and speak without limitation; and perform work in any clean air environment. The claimant can understand, remember and carry out simple instruction; make judgments on simple work-related decision; interact appropriately with the public, supervisors and co-workers; respond appropriately to work pressure in a usual work setting; and respond appropriately to changes in a routine work setting "

(Tr. 25-26).

Adopting the VE's job findings, the ALJ determined that Plaintiff could perform the unskilled, exertionally light jobs of security guard, night watch person, greeter, cashier, or stocker, finding that in total, 50,000 of such jobs existed in the regional economy (Tr. 27).

The ALJ supported his determination by stating that he found Plaintiff's subjective complaints "not fully credible," noting that the "[t]ype and nature" of Plaintiff's medical treatment was "grossly disproportional to the degree of pain and limitation he described at the hearing" (Tr. 25).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.

1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

**Credibility**

Plaintiff argues that the administrative decision is tainted by the erroneous conclusion that his hearing testimony was not fully credible. *Docket #14* at 16-20. In particular, he contends that contrary to the requirements of SSR 96-7p, the ALJ neglected to consider critical evidence supporting his claims, such as his chiropractic records, daily activities, and financial limitations accounting for his failure to seek regular treatment. *Id.*;C.F.R. §§404.1529(c)(3), 416.929(c)(3)

**1. The ALJ Adhered to the Procedural and Substantive Requirements of SSR 96-7p**.

The credibility determination is guided by SSR 96-7p, which describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." Second, SSR 96-7p mandates that "the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*

In regard to the first step in the credibility analysis, substantial evidence supports ALJ Wilenkin's finding that Plaintiff's testimony conflicted with significant portions of his medical records. The ALJ supported his finding by noting that imaging studies performed in February and March 2004, showed either mild degenerative changes or a complete lack

of pathology (Tr. 24 *citing* 114, 124, 138). He also cited Dr. Davis' finding that Plaintiff retained the ability to perform exertionally medium work (Tr. 24).

The ALJ's inquiry at the second step of the credibility determination was likewise procedurally and substantively acceptable. C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating whether a claimant experiences disabling pain:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Although Plaintiff argues that the ALJ's analysis was inadequate, in fact, the administrative decision refers to all the above factors. The ALJ permissibly discounted Plaintiff's testimony regarding his daily activities by finding that his claims of limitations were "grossly disproportional" to the type and nature of his treatment (Tr. 25). The ALJ also cited treating source findings that Plaintiff displayed normal muscle tone and an unremarkable neuromusculoskeletal exam (Tr. 118). Likewise, Plaintiff's September 2002 acknowledgment to an emergency room physician that he regularly traveled to Florida in the winter undermines his testimony that his condition had prevented him from engaging in meaningful activity since the March 1998 onset of disability (Tr. 97).

Further medical records show that Plaintiff received primarily conservative care.

While he contends that his lack of aggressive treatment was attributable to financial limitations rather non-disability, none of his treating records show that surgery or other non-conservative treatment was recommended or even considered . His statement that he did not attempt to perform back exercises, along with medical records showing that he continued to smoke stand at odds with his claim that he was disabled as a result of back pain and asthma (Tr. 107, 208). *See Sias v. Secretary of Health and Human Services*, 861 F.2d 475, 480 (6th Cir. 1988) (In regard to smoking: "If the claimant in this case chooses to drive himself to an early grave, that is his privilege-but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride.") Finally, although Plaintiff alleged sleep disturbances as a result of his conditions, the record is absent any indication that these conditions required him to change his sleeping habits *i.e*., sleep on a board, or in an upright position, the need for extra pillows, etc. To the contrary, Plaintiff acknowledged to a consultive examiner that he continued to sleep with one pillow (Tr. 106).

The deference generally accorded the administrative credibility finding is appropriate here. An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'" *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989); *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *Richardson, supra,* 402 U.S. at 401.

### 2. Dr. Miramonti

Arguing further that his testimony was supported by objective medical evidence,

-13-

Plaintiff also faults the ALJ for failing to adopt Chiropractor Miramonti's finding that he was unable to sit, stand, or walk for more than an hour each day (Tr. 101). However, the ALJ was entitled to reject Miramonti's opinion two reasons: First, Miramonti's finding are contradicted by Dr. Davis' conclusion that Plaintiff could perform exertionally medium work (Tr. 119). The ALJ was not obliged to adopt Miramonti's opinion in light of substantial evidence supporting a different conclusion. Second, although Plaintiff refers to Miramonti as a "treating doctor," because Miramonti is a chiropractor, his opinion is not entitled to the same deference allotted to a medical or osteopathic physician. *Compare* 20 C.F.R. § 416.913(a)(1); §416.913(d)(1). Consistent with the Regulation's requirements, the ALJ accorded deference to Dr. Davis' findings.

### C. Sentence Six

Finally, Plaintiff cites medical records submitted *following* the November 10, 2005 administrative determination to support his allegations of disability. *Docket #14* at 19. However, this material is subject to only narrow review by this Court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695-96. Sentence Six of 42 U.S.C.A. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the*

*failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).

A Sentence Six remand is not warranted here. A review of the later records shows that because the material was not only submitted, but *created* subsequent to the November 10, 2005 decision, it is immaterial to the non-disability determination between March 10, 1998 through November 10, 2005. If Plaintiff wishes to establish that he experienced a deterioration of his condition or the onset of another illness subsequent to the ALJ's November 2005 decision, the appropriate remedy is to initiate a new claim for benefits alleging an onset date consistent with the deterioration. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988).

In closing, the finding that the ALJ's determination should be upheld is not intended to trivialize Plaintiff's legitimate impairments as a result of back pain and asthma. However, based on a review of this record as a whole, the ALJ's decision is clearly within the "zone of choice" accorded to the fact-finder at the administrative hearing level pursuant to *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## IV. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10)

days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: March 31, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 31, 2008.

                                              S/Gina Wilson
                                              Judicial Assistant