**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ROGER EARL VAN HECK,**

                **Plaintiff(s),**        **CASE NUMBER: 06-15233**
                                        **HONORABLE VICTORIA A. ROBERTS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY**,

                **Defendant(s).**
_____/

**ORDER**

## I.    INTRODUCTION

This matter is before the Court on the parties' cross Motions for Summary Judgment. Magistrate Judge R. Steven Whalen recommends that the Court GRANT Defendant's motion and DENY Plaintiff's motion. The Court **ADOPTS** this recommendation.

## II.    PROCEDURAL HISTORY AND FACTS

Magistrate Whalen adequately summarizes the relevant facts and procedural history. His summary is incorporated here.

## III.    STANDARD OF REVIEW

In the Social Security context, the district court reviews the decision of the Commissioner for a determination of whether the decision exceeds statutory authority or is arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). This Court must review the Administrative Law Judge's decision to determine whether it is supported by "substantial evidence." "Substantial

evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Secretary*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way.  *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).  This standard presupposes that there is a "zone of choice" within which the Administrative Law Judge ("ALJ") may make a decision without being reversed.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  In other words, if the Commissioner's determination is supported by substantial evidence, it must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently.  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  The Court must only review the record that was before the ALJ and cannot review the evidence *de novo*, weigh the evidence, or make credibility determinations.  *Id.*

## IV.    ARGUMENTS

There are five factors the Social Security Administration uses to determine eligibility for benefits.  Plaintiff must establish that: (1) he is not presently engaged in gainful employment; (2) he suffered from a severe impairment; and (3) the impairment met or was medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and was of sufficient duration.  If Plaintiff does not meet his burden at step three, he may still meet his burden at step four by proving he did not have the "residual functional capacity" ("RFC") to perform past work.  *Jones v. Comm'r of Soc. Security*,

336 F.3d 469, 474 (6th Cir. 2003).

If Plaintiff satisfies his burden, the burden shifts to the Commissioner for the fifth factor to show there is other work available in the economy that the claimant can perform. 20 C.F.R. §§ 404.1520(b)-(f). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987). This substantial evidence may be in the form of Vocational Expert ("VE") testimony, but only if the hypothetical question posed to the expert accurately portrays the claimant's individual physical and mental impairments. *Id.*

### A. Plaintiff's Claims

Plaintiff Roger Earl Van Heck seeks disability benefits from March 10, 1998 for spinal cord injuries, emphysema, and asthma. Plaintiff's past work experience includes employment as a roofer, but the VE does not consider this relevant work experience.

Plaintiff claims he has chronic pain in his back that radiates down his right leg and into his right foot and toes. Tr. 204-206. The pain also causes cramps and knots in his left calf muscle. Tr. 206. To help alleviate this, Plaintiff: (1) frequently wears a corset-type brace; (2) gets massages; (3) attends vocational rehabilitation and therapy sessions; (4) has chiropractic spinal adjustments; and (5) puts a gel on his back that numbs the pain for a short period of time. Tr. 206-208. He is prescribed medication, but testified he is not "really into doing the meds." Tr. 206. Plaintiff says he refuses to have surgery because he is afraid his condition will get worse. Tr. 207-208.

Due to his back pain, Plaintiff: (1) can only sit for about 20 minutes and stand for no more than 15 minutes; (2) rests after walking half of a block; (3) lies down at least

3

three times a day for about half an hour; (4) cannot bend or squat; and (5) gets up to stretch during the night. Tr. 211, 213-214.

Plaintiff also claims he has asthma. Tr. 208. Sometimes he has asthma attacks when he participates in physical activity. Tr. 215. Plaintiff does not carry groceries because he does not know when he will have an attack. Tr. 214-215. Plaintiff also stopped playing baseball, volleyball, and basketball. Tr. 212.

During an asthma attack, Plaintiff's knees become weak and he suffers shortness of breath and dizziness. It normally takes him five to seven minutes to catch his breath. Tr. 209-211. Plaintiff uses an inhaler and a breathing machine. Tr. 209.

Despite his problems, Plaintiff testified he can: (1) bath, dress, shave, and feed himself; (2) make a sandwich; (3) wash dishes; (4) lift a gallon of milk; and (5) put clothes in drawers after they are folded. Tr. 211, 213-215. Plaintiff testified that his son does household work and prepares dinner. Tr. 212-213.

### B. Magistrate's Recommendation

To determine the range of suitable alternative jobs available for persons with Plaintiff's limitations, the ALJ asked the VE to assume an individual of Plaintiff's age with the same educational background and no past relevant work experience. The VE testified that Plaintiff would be unable to perform any jobs in the metropolitan Detroit area or in Michigan. Tr. 216.

The ALJ next asked the VE to assume an individual of Plaintiff's age with the same educational background and no past relevant work experience who could: (1) stand and/or walk six hours of an eight-hour workday; (2) sit two hours of an eight-hour workday; and (3) lift 20 pounds occasionally and 10 pounds frequently. The VE also

4

assumed the hypothetical individual: (1) has a history of back pain; (2) suffers from asthma; and (3) should avoid exposure to atmospheric irritants. The VE testified that such individual could work as a security guard, night-watch person, or cashier. Tr. 217-219. The VE testified there are over 50,000 jobs available in Michigan with approximately 25,000 of them in Southeastern Michigan. Tr. 219.

In a third hypothetical, the ALJ asked the VE to assume an individual who could not balance, but could occasionally climb, kneel, crouch, crawl, and stoop. The hypothetical individual could also lift up to 50 pounds occasionally and 25 pounds frequently. Tr. 219. The VE testified that in addition to a security guard, night-watch person and cashier, such an individual could work as a packager in a food processing plant or a pharmaceutical warehouse (30,000 available jobs). Tr. 219-220.

The ALJ determined that Plaintiff's asthma, mild spinal degenerative joint disease, and questionable peripheral neuropathy of unknown etiology were "severe" based on the requirement in 20 C.F.R. §404.1520(c). Nonetheless, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. He found Plaintiff's allegations regarding his limitations were not fully credible and concluded that Plaintiff retains the RFC to perform unskilled work at the medium exertional level in a clean air environment that requires occasional postural activities, but no balancing. Although Plaintiff's exertional limitations do not allow him to perform the full range of work at this level, the ALJ found there are a significant number of jobs in the national economy Plaintiff can perform. Hence, the ALJ concluded that Plaintiff was not under a "disability" as defined in the Social Security Act.

The Magistrate recommends the Court uphold the decision. He says: (1) the ALJ's credibility determination was proper; (2) the ALJ was entitled to reject Dr. Frank C. Miramonti's ("Dr. Miramonti") opinion; (3) Dr. Miramonti's opinion as a chiropractor is not entitled to the same amount of deference given to a medical or osteopathic physician; (4) the ALJ accorded the appropriate amount of deference to Dr. David K. Davis's ("Dr. Davis") findings; and (5) a remand under sentence six of 42 U.S.C. §405(g) based on new medical records is not warranted.

### C.   Plaintiff's Objections

Plaintiff seeks reversal. He says: (1) the ALJ's credibility determination was contrary to the medical evidence; (2) the ALJ did not consider all of the credibility factors; (3) the ALJ did not consider whether the lack of health insurance or ability to pay for medical treatment was the reason for his minimal medical treatment; (4) Dr. Miramonti's opinion was not given enough weight and Dr. Davis's opinion received too much weight; and (5) the ALJ did not evaluate the role Plaintiff's depression and anxiety played in his inability to work.

Plaintiff also says Magistrate Whalen did not provide any medical authority for his finding that a relationship exists between Plaintiff's back pain and smoking habits.

Defendant did not respond.

## V.   ANALYSIS

### A.   Credibility Determination

The ALJ made the following conclusion regarding Plaintiff's credibility, "Overall, the record does not support the degree of limitation alleged by [Plaintiff]."

The Court finds this to be an accurate assessment in light of the medical evidence.

The evidence most favorable to Plaintiff is the opinion Dr. Miramonti made on September 14, 2003.  Dr. Miramonti indicated Plaintiff's condition is chronic with periods of acute exacerbation.  He also said Plaintiff can only:  (1) sit, stand, and walk for less than an hour; and (2) lift, carry, and handle objects less than 10 pounds.

The remainder of the evidence contradicts Plaintiff's testimony.  On October 16, 2003, Dr. L. Banerji from the Health Medical Clinic evaluated Plaintiff.  Dr. Banerji found Plaintiff: (1) did not have any functional limitations orthopedically; (2) could move his lumbar and cervical spine normally and without pain; (3) could bend and stoop; and (4) could squat and arise from a squatting position.

In addition, a state-agency physician performed a "Physical Residual Functional Capacity Assessment" on November 2, 2003.  The physician found Plaintiff can do the following:  (1) occasionally lift and/or carry 50 pounds frequently; (2) frequently lift and/or carry 25 pounds; (3) stand and/or walk for about six hours in an eight-hour workday; (4) sit with normal breaks for about six hours in an eight-hour workday; (5) push and/or pull an unlimited amount; (6) frequently kneel and crawl; (7) squat and arise from a squatting position; and (8) occasionally climb, balance, stoop, and crouch.  This physician also found Plaintiff could move his lumbar and cervical spine normally and without pain.

Further, Dr. Davis indicated on February 16, 2004 that Plaintiff can squat.  He also indicated on April 27, 2004 that Plaintiff can:  (1) occasionally lift and/or carry 50 pounds; (2) frequently lift and/or carry 25 pounds; (3) occasionally climb ramps, stairs,

and ladders; and (4) occasionally kneel, crouch, crawl, and stoop, but never balance.

According to Dr. Davis, Plaintiff's pushing and/or pulling, sitting, and standing and/or

walking abilities were unaffected by Plaintiff's impairment.

**B.      Credibility Factors**

Part of the analysis used to determine whether Plaintiff is eligible for disability

benefits requires the ALJ to consider whether Plaintiff has the RFC to perform the

requirements of his past relevant work or other work that exists in significant numbers in

the national economy.  In making this assessment, the ALJ must consider all symptoms

and the extent to which they can reasonably be accepted as consistent with the

objective medical evidence.

In evaluating subjective symptoms such as pain, Plaintiff must first show he has

a medically determinable physical or mental impairment that could reasonably be

expected to produce the symptoms.  *See* 20 CFR §416.929(b).  The ALJ then evaluates

the intensity and persistence of the symptoms to determine the extent in which they limit

Plaintiff's ability to work.  This evaluation requires a credibility determination.  The ALJ

must consider seven factors to determine whether Plaintiff's testimony about his pain is

credible:

> (i)      His daily activities;
> (ii)     The location, duration, frequency, and intensity of his pain;
> (iii)    Precipitating and aggravating factors;
> (iv)     The type, dosage, effectiveness, and side effects of any current
>          medication or medication previously taken to alleviate pain;
> (v)      Other than medication, any treatment he currently receives or
>          received in the past to relieve pain;
> (vi)     Any measures he currently uses or used in the past to relieve pain
>          (e.g., lying flat on [his] back, standing for 15 to 20 minutes every
>          hour, sleeping on a board, etc.); and
> (vii)    Other factors concerning functional limitations and restrictions due

to pain.

20 C.F.R. §416.929(c)(3).

Plaintiff says the ALJ did not consider each factor individually because he simply stated, "In summary, taken as a whole, the factors used to evaluate credibility point to a lack of it in this case."

The Court disagrees.

The ALJ addressed the first, second, fourth, fifth and sixth factors when he said: (1) "[Plaintiff's] daily activities are fairly limited, consisting primarily of watching television.  He is able to prepare simple meals. . . .  He washes just a few dishes and puts away clothes already folded"; (2) "[Plaintiff] testified that he has chronic pain throughout his back that radiates into his feet.  He described cramps and 'knots' in his calves"; (3) "the pain disturbs [Plaintiff's] sleep"; (4) Plaintiff "does not take any medications"; (5) "[Plaintiff] stated that he has had spinal adjustments . . . [.]  He had a brief course of physical therapy which seems to have been of some benefit"; (6) "[Plaintiff] had begun chiropractic treatment in July 2003"; (7) "[a]pplying ice provides some relief"; and (8) "[Plaintiff] wears a corset-type brace."

Plaintiff did not present testimony regarding the third and seventh factors.

## C.    Lack of Medical Treatment

The ALJ stated:

The type and nature of treatment is grossly disproportional to the degree of pain and limitation [Plaintiff] described at the hearing.  The objective evidence is minimal, and far less than would be expected given [Plaintiff's] allegations.  The record does not support the medical need for such restriction of activity as described by [Plaintiff].

Plaintiff argues the ALJ erred by not considering whether such minimal medical treatment was due to the lack of health insurance or funds to pay for medical treatment.

The Court disagrees.

First, Plaintiff does not cite any authority to support his position that the ALJ must consider these factors.

Second, even Plaintiff does not affirmatively assert these were the reasons for such minimal treatment. His "Brief in Support of Motion for Summary Judgment" says, "[the ALJ's] reliance on [his] supposed lack of medical treatment does not take into account the fact that [he] was unemployed for most of the past fifteen years, and *presumably* had neither health insurance nor the funds to pay for doctor visits out of his own pocket." (Emphasis added).

Finally, the record demonstrates Plaintiff's ability to obtain medical treatment when necessary. On February 11, 2004, he went to Mount Clemens General Hospital's emergency room because he was having pain in his lower back. He returned to the emergency room on November 16, 2004 complaining of back pain.

## D. Medical Opinions

The ALJ did not give controlling weight to Dr. Davis's opinion because he is not Plaintiff's treating physician. However, it was given "great weight" because the ALJ stated it was consistent with the "bulk of the evidence."

The Court finds it was proper for the ALJ to give such weight to Dr. Davis and not Dr. Miramonti. Dr. Davis, a physiatrist, is an acceptable medical source; Dr. Miramonti, a chiropractor, is not. *See* 20 C.F.R. §416.913(a) (acceptable medical sources include qualified speech-language pathologists, licensed or certified psychologists, and licensed

10

physicians, optometrists, and podiatrists).

**E.     Depression and Anxiety**

Plaintiff says the ALJ failed to account for the fact that he suffers from depression and anxiety.

However, there was only one piece of evidence in the record that documented Plaintiff's depression and anxiety when the ALJ rendered his decision.  In a letter dated February 16, 2004, Dr. Davis stated:  (1) Plaintiff has a history of depression and anxiety; (2) Plaintiff's depression is constant and mild; and (3) the depression is caused by Plaintiff's inability to work as a roofer.

More importantly, Plaintiff's request for disability benefits does not mention mental disabilities.  His Disability Report indicates he is disabled due to spinal cord injuries, emphysema, and asthma.  Plaintiff even also answered "no" to the following question on his Disability Report: "Have you been seen by a doctor/hospital/clinic or anyone else for emotional or mental problems that limit your ability to work."

Further, Plaintiff's appeal form does not mention the ALJ's failure to evaluate his mental disabilities as a basis for appealing.

Thus, the ALJ appropriately concluded, "The evidence does not indicate the existence of a 'severe' mental impairment.  The record does not, based upon any mental impairment, reflect even mild limitations in the claimant's ability to perform the activities of daily living, maintain social functioning, or maintain concentration, persistence and pace."

**F.     Medical Authority**

When the Magistrate stated, "[Plaintiff's] statement that he did not attempt to perform back exercises, along with medical records showing that he continued to smoke stand at odds with his claim that he was disabled as a result of back pain and asthma," the Magistrate was not contending a relationship exists between Plaintiff's back pain and smoking habits as Plaintiff claims. He was relating Plaintiff's smoking habits to his alleged disability due to asthma.

## VI.    CONCLUSION

The Court **ADOPTS** the Magistrate's Report and Recommendation. Defendant's motion is **GRANTED**; Plaintiff's motion is **DENIED**.

**IT IS ORDERED**.


s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  April 21, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on April 21, 2008.

s/Linda Vertriest
Deputy Clerk